# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOSE O. SERNA,

      Plaintiff,

   -vs-                                                                  No. CIV 02-0003 LH/KBM

THE BOARD OF REGENTS OF THE NEW
MEXICO SCHOOL FOR THE VISUALLY
HANDICAPPED, NELL C. CARNEY, JIM
SALAS and JOHN KENNEDY,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants, Board of Regents of the New Mexico School for the Visually Handicapped, Nell Carney and Jim Salas', [sic] Motion to Dismiss (Docket No. 12), filed April 17, 2002. The Court, having considered the Motion, the memoranda of the parties, and relevant law, and otherwise being fully informed, finds that the Motion is well taken and will be **granted**.

Plaintiff Jose O. Serna (Serna) brought suit in state court, pursuant to 42 U.S.C. §§ 1983 and 1988, against Defendants Board of Regents of the New Mexico School for the Visually Handicapped (Board), Superintendent Nell Carney (Carney), Board President Jim Salas (Salas), and John Kennedy, an attorney under contract to the Board. He alleges that Defendants violated his due process rights in connection with the termination of his implied contract of employment with

the New Mexico School for the Visually Handicapped (NMSVH or School) and seeks damages, attorney's fees, expenses, and costs.

Following removal of this case to federal court, Defendants Board and Carney and Salas, in their official capacities, moved for dismissal on grounds that they are not "persons" subject to suit under 42 U.S.C. § 1983. They also move for dismissal of any constitutional torts brought under state law on grounds that immunity for such claims has not been waived under the New Mexico Tort Claims Act (NMTCA). Defendant Kennedy is not a party to this Motion.

Movants concede that they have waived their Eleventh Amendment immunity by removing this action from state court to federal court. As the Tenth Circuit Court of Appeals has observed, "the test for determining a waiver of immunity is strict and . . . 'there must be an unequivocal intent to waive the immunity.'" *McLaughlin v. Bd. of Trs. of State Colls. of Colo.*, 215 F.3d 1168, 1170 (2000)(quoting *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1234 (10th Cir. 1999)). However, when "'the invocation of federal court jurisdiction [is] brought about by defendants' own counsel [through removal],' the case presents circumstances showing 'an extraordinarily effective waiver.'" *Id.* (first alteration in original)(internal quotations omitted) (quoting *Sutton*, 173 F.3d at 1235).

Section 1983 provides in part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2

42 U.S.C. § 1983 (emphasis added). Thus, "[a] cause of action under § 1983 requires the deprivation of a civil right by a '*person*' acting under color of state law." *McLaughlin*, 215 F.3d at 1172 (emphasis added). The United States Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Additionally, the Tenth Circuit has explained that "'a governmental entity that is an arm of the state for Eleventh Amendment purposes' is not a 'person' for section 1983 purposes." *McLaughlin*, 215 F.3d at 1172 (quoting *Harris v. Champion*, 51 F.3d 901, 905-06 (10th Cir. 1995)). The issue before this Court, then, is whether the Board and its officials in their official capacities are "arms of the state."

While "state and federal courts share concurrent jurisdiction over § 1983 claims for the denial of federal constitutional rights[,] common law defenses like sovereign immunity . . . are governed by federal law regardless of whether they might be permitted under state law." *Carter v. City of Las Cruces*, 121 N.M. 580, 582, 915 P.2d 336, 338 (Ct. App. 1996)(citing *Martinez v. California*, 444 U.S. 277, 283 n.7 (1980); *Howlett By and Through Howlett v. Rose*, 496 U.S. 356, 383 (1990); *Owen v. City of Independence*, 445 U.S. 622, 648-49 (1980)). As the Tenth Circuit has noted, "'[t]he arm-of-the-state doctrine bestows immunity on entities created by state governments that operate as alter egos or instrumentalities of the states.'" *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (2000) (alteration in original)(quoting *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th Cir. 1996)).

The inquiry under this doctrine is well-defined:

> The issue here . . . turns on whether the [entity] is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the

> Eleventh Amendment does not extend. The answer depends, at least in part, on the nature of the entity created by state law.

*Id.* (alteration in original)(quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). Essentially, the question is "whether [a particular entity] is 'more like a county or city than . . . like an arm of the state?'" *Id.* (quoting *Mt. Healthy*, 429 U.S. at 280). Although arm-of-the-state status is ultimately a matter of federal law, it is "determined in each case by reference to the particular state laws characterizing the entity." *Id.*

The Tenth Circuit has elaborated the *Mt. Healthy* test for arm of the state:

> [W]e engage in two general inquiries. [T]he court first examines the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state. Second, the court examines the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing. The governmental entity is [an arm of the state] if the money judgment sought is to be satisfied out of the state treasury.

*Id.* (first alteration added)(quoting *Watson*, 75 F.3d at 574-75). Additionally, under these "general rubrics of autonomy and financial independence," the Appellate Court has identified several other relevant factors:

> (1) the characterization of the governmental unit under state law; (2) the guidance and control exercised by the state over the governmental unit; (3) the degree of state funding received; and (4) the governmental unit's ability to issue bonds and levy taxes on its own behalf.

*Id.* at 1166 (quoting *Sutton*, 173 F.3d at 1232). Other Circuits have considered additional factors, including "whether the entity is concerned primarily with local as opposed to statewide problems." *Id.* (quoting *Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999)).

Movants maintain that they are indistinguishable from the University of New Mexico and the New Mexico School of Mines, which have been held to be arms of the state. *See Buchwald v.*

*Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 494 n.3 (10th Cir. 1998)(University of New Mexico School of Medicine, Regents, and Committee on Admissions are "arms of state" entitled to Eleventh Amendment immunity; individual defendants in their official capacities entitled to immunity from damages claims); *Korgich v. Regents of the N.M. Sch. of Mines*, 582 F.2d 549, 551 (10th Cir. 1978)(action, essentially one against the State of New Mexico, barred by Eleventh Amendment); *see also Livingston v. Regents of N.M. Coll. of Agric. and Mech. Arts*, 64 N.M. 306, 328 P.2d 78 (1958)(action against board of regents is action against state; rule of governmental immunity applicable, regardless of liability insurance). As are the University of New Mexico and the School of Mines, NMSVH is a "state educational institution" created by the state constitution. N.M. CONST., art. XII, § 11 ("The university of New Mexico, at Albuquerque; the New Mexico state university, near Las Cruces, formerly known as New Mexico college of agriculture and mechanic arts; . . . the New Mexico institute of mining and technology, at Socorro, formerly known as New Mexico school of mines; . . . the New Mexico school for the visually handicapped, at Alamogordo, formerly known as New Mexico institute for the blind; . . . are hereby confirmed as state educational institutions."). The New Mexico constitution directs the legislature to provide for the control and management of NMSVH and the other state educational institutions by means of boards of regents nominated and appointed by the governor with the consent of the senate. *Id.* § 13. It further provides that "[t]he schools, colleges, universities and other educational institutions provided for by this constitution shall forever remain under the exclusive control of the state." *Id.* § 3. Additionally, New Mexico law defines "state agency" as "any department, institution, board, bureau, commission, district or committee of government of the state of New Mexico and means every office or officer of any of the above." N.M. STAT. ANN. § 6-3-1 (Michie 1999).

Plaintiff contends that the state has expressly waived the School's immunity and, therefore, it's status as an arm of the state, by giving the Board of Regents the right to sue and be sued and by directing the Board to "comply with the provisions of the fourteenth amendment to the United States constitution." N.M. STAT. ANN. § 21-5-2(B),(C)(Michie 2002). This argument fails for several reasons. As *McLaughlin* clearly establishes, waiver of Eleventh Amendment immunity does not affect an entity's status as an arm of the state and, thereby, whether it is a "person" for purposes of § 1983. Additionally, waiver of immunity by consent to suit in state court, does "not constitute a waiver as to actions brought in the federal courts, unless that intent clearly appears." *Hamilton Mfg. Co. v. Trs. of the State Colls. in Colo.*, 356 F.2d 599, 601 (1966). There is no evidence of any intention to waive immunity to suit in federal court in the New Mexico statute. Finally, the Board's authority as "a body corporate . . . with the right as such of suing and being sued, or contracting and being contracted with," N.M. STAT. ANN. § 21-5-2(B)(Michie 2002), is not dispositive of its status as an arm of the state. The boards of regents of both the University of New Mexico and the School of Mines enjoy similar rights, and they are held to be arms of the state. *See id.* §§ 21-7-4, -11-4 (Michie 1996); *Buchwald*, 159 F.3d at 494 n.3; *Korgich*, 582 F.2d at 551. As the Tenth Circuit has explained, while "authority to sue and be sued and . . . ability to own property are certainly indicia of autonomy analogous to those enjoyed by local school districts . . . these powers must be considered in light of the purpose, composition, and function of the state entity in question." *Sturdevant*, 218 F.3d at 1168.

Considering the various factors before it, the Court can only reach the conclusion that the Board of Regents and Defendants Carney and Salas in their official capacities are arms of the state and not "persons" subject to suit under § 1983. There is no question that the issues critical to the

6

autonomy analysis, characterization under state law and the degree of state control, lead to this finding. Although the parties have not addressed the factors relevant to financial independence, the Court finds it unnecessary to attempt to delve into these issues. As the *Sturdevant* Court noted:

> [b]ecause of the open-ended nature of the arm-of-the-state analysis, it is easy to become caught up in the minutiae of state law, such as the extent of control over the Board by the executive and legislature, the details of the risk management fund's operation, and the proportional sources of the Board's funding. These details, however, must not eclipse a fundamental distinction that emerges from *Mt. Healthy* and the cases following it–between alter egos or instrumentalities of states on the one hand, and political subdivisions such as cities and counties on the other. Considering the various factors in context, the Board lacks a fundamental characteristics of a political subdivision–political control by some community other than other than the state as a whole.
> Review of Tenth Circuit precedent in this area underscores the importance of this fundamental distinction. We have consistently held that state colleges and universities are arms of the state, whereas local school boards are political subdivisions, even if largely dependent on state funding and subject to state control.

218 F.3d at 1170 (discussing status of Colorado State Board for Community Colleges and Occupational Education).

As expressed by the New Mexico state legislature, the purpose of the NMSVH "is intended and meant for the proper formal education of the blind of the *state*," thus, focusing on statewide rather than local concerns. N.M. STAT. ANN. § 21-5-1 (Michie 1996)(emphasis added). In both the New Mexico constitution and the state statutes the School is classified and overseen on a par with the state universities, which are indisputably arms of the state. Thus, the Court will grant Movants' Motion and dismiss the § 1983 claims against them.

The Court also will grant the Motion with regard to any state law tort claims brought under the NMTCA for violation of Plaintiff's constitutional rights. As the *Carter* Court explained, "[u]nlike federal law, New Mexico has no statute analogous to § 1983 that would provide for

7

damages against government entities or their officials for past violations of state statutes or the state Constitution." 121 N.M. at 84, 915 P.2d at 340. While the Tort Claims Act authorizes damages actions for deprivation of rights under the constitution and laws of the United States or New Mexico, such claims may only be brought against law enforcement officers. *Id.* (citing N.M. STAT. ANN. § 41-4-12).

**IT IS HEREBY ORDERED** that Defendants, Board of Regents of the New Mexico School for the Visually Handicapped, Nell Carney and Jim Salas', [sic] Motion to Dismiss (Docket No. 12), filed April 17, 2002, is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**