UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE O. SERNA,

       Plaintiff,

vs.                                                CIV 02-03 LH/KBM

NELL C. CARNEY, JIM SALAS
and JOHN KENNEDY,

       Defendants.

## MEMORANDUM OPINION AND ORDER ON
## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

       This matter came on for consideration of Plaintiff's Motion to Compel Discovery *(Doc. 55)*. The Court has reviewed the motion, the memoranda and exhibits submitted by the parties and the relevant authorities. The Court finds that the motion is well taken in part and will be granted in part.

### Background

       Plaintiff Serna was a contract employee who had worked at the New Mexico School for the Visually Handicapped for twenty-four years. At the time he was terminated by Defendants, Serna was under a written contract of employment for the period of July 1, 1998 to June 30, 1999. In May 1999, Plaintiff was placed on administrative leave pending an investigation into student complaints. On June 29, 1999, Plaintiff was notified of Defendants' "refusal to reemploy/termination."

Serna contends that his due process rights were violated by Defendants' failure to provide any reasons for the decision and when they declined Plaintiff's requests for a hearing. In this litigation, Defendants maintain that Plaintiff was not entitled to any hearing under the School Personnel Act because he was "employed to perform primarily district-wide managerial functions." *See* N.M. STAT. ANN. § 22-10-16(c) ("just cause" required for failure to renew a contract except for employees who are "a non-certified manager or administrator with school-wide managerial functions."). As such, Defendants argue, Serna was not entitled to any procedures regarding a decision not to renew his contract.

Defendants base the above conclusion on a job description reciting district-wide duties that was prepared and approved during the time that Serna was on administrative leave. Serna alleges, however, that the defendants promulgated the job description with the intent to deprive him of his due process rights in association with anticipated non-renewal of his contract. In the motion to compel, Plaintiff seeks to depose John Kennedy, the attorney for the School, regarding his role in creation of the job description and advice he provided to his clients in that regard.

Defendants have objected to deposing Mr. Kennedy on the grounds of attorney/client privilege. To clarify the issues, I directed Plaintiff to submitted proposed questions that would be asked and specific responses from Defendants. It is in this context that I review the motion to compel.

The vast majority of proposed question clearly implicate the privilege as they directly deal with the content of discussions between the attorney and client. Indeed, Plaintiff specifically wants to know what legal advice Mr. Kennedy provided to his client with regard to Serna's job description and any entitlement to due process that Serna had or would lose under a new job

-2-

description. Plaintiff argues that the attorney/client privilege does not prohibit disclosure based on four grounds: (1) implicit waiver; (2) express waiver; (3) the dispensing of business rather than legal advice; and (4) the crime-fraud exception. Having reviewed the memoranda, exhibits and cited authorities, I am unpersuaded that the motion to compel has merit on any of these grounds for the reasons set forth in Defendants' brief. I will add only the following observation with regard to the first and fourth bases proffered by Plaintiff.

### Defendants did not implicitly waive the privilege.

Plaintiff contends that Defendants implicitly waived the privilege by interposing a qualified immunity defense and thereby "affirmatively asserting a good faith belief in the lawfulness of their actions." *Doc. 55* at 2. Plaintiff relies on *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash.1975) that involved an action brought under 42 U.S.C. § 1983 in which the defendants raised the defense of "good faith immunity. The *Hearn* court reasoned that an implied waiver can be found if: (1) the party possessing the privilege took some affirmative act, such as filing a suit; (2) the affirmative act served to put the protected information at issue by making it relevant to the case; and (3) recognizing the claim of privilege would deny the opposing party access to vital information.

The *Hearn* court relied on the Supreme Court's definition of good faith for qualified immunity purposes in *Wood v. Stickland*, 420 U.S. 308 (1975). The test of good faith enunciated in *Hearn* included both subjective and objective elements. Thus, the *Hearn* defendants necessarily placed their state of mind at issue by relying on legal advice given to them by the state attorney general, and that information was absolutely relevant to the *Wood* subjective component of the qualified immunity analysis.

Although the principle of an implied waiver pronounced in *Hearn* appears to have continued vitality, I question its endurance in the context of a qualified immunity defense. In 1982, in response to proliferation of suits against governmental officials and the resulting burdens placed upon them, the Supreme Court replaced the *Wood* inquiry with an essentially objective test. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because a defendant's subjective understanding of the law is no longer a component of the qualified immunity inquiry under *Harlow*, Defendants have not impliedly waived the attorney-client privilege by affirmatively interposing a qualified immunity defense. *See U.S. v. Ohio Edison Co.*, 2002 WL 1585597, *3 (S.D. Ohio 2002) (noting that when *Hearn* was decided, "the defendant's subjective understanding of the state of the law was an element of [the qualified immunity] defense").

**Plaintiff fails to demonstrate that the crime-fraud exception should apply.**

Plaintiff asserts that the crime-fraud exception supports granting the motion to compel. This exception prevents a client from insulating attorney-client conversations related to future wrongdoing. As the Supreme Court has explained,

> [t]he attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection--the centrality of open client and attorney communication to the proper functioning of our adversary system of justice--"ceas[es] to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing." 8 Wigmore, § 2298, p. 573 (emphasis in original); see also *Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933). It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the "seal of secrecy," *ibid.*, between lawyer and client does not extend to communications "made for the purpose of getting advice for the commission of a fraud" or crime. *O'Rourke v. Darbishire*, [1920] A.C. 581, 604 (P.C.).

*U.S. v. Zolin*, 491 U.S. 554, 562-63 (1989). Plaintiff contends that the sought attorney-client communications involve discussions aimed at depriving him of due process in connection with the termination of his employment.

Under federal law, the Tenth Circuit has not extended the crime-fraud exception to attorney-client privilege to tortious conduct generally, but has limited it to attorney advice in furtherance of crime or fraud. *Motley v. Marathon Oil. Co.*, 71 F.3d 1547, 1552 (10th Cir. 1995). The party claiming that the crime-fraud exception applies must present *prima facie* evidence that the allegation of attorney participation in crime or fraud has some foundation in fact. *Id.* at 1551, citing *In re Vargas*, 723 F.2d 1461,1467 (10th Cir. 1983).

Yet often, only the communications themselves will demonstrate whether they fall within the crime-fraud exception to the privilege.

> *[I]n camera* review may be used to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception. We further hold, however, that before a district court may engage in *in camera* review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability. Finally, we hold that the threshold showing to obtain *in camera* review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged.

*Id.* at 574-75. Unfortunately, some of the evidence submitted by Plaintiff in support of the threshold showing for *in camera* review is the subject of a motion to strike as privileged communications that is now pending before the presiding judge. Looking only at the remaining evidence, I am not satisfied that it rises to the level justifying an *in camera* review of Kennedy's answers under oath to the proposed questions to which the attorney-client privilege has been

invoked. If Judge Hansen denies the motion to strike, I will reexamine my position at Plaintiff's request.

On a final note, I have reviewed the excerpts of other deposition testimony which was submitted within the Reply. It would appear that Defendants have interposed attorney-client privilege objections even on occasions where the privilege could not have attached to the communication because of lack of confidentiality (for instance, open public meetings). Moreover, simply because Kennedy may have been physically present at the time a statement was made hardly converts any discussion into one in which legal advice was being sought. Painting the privilege with such a wide brush during Kennedy's future deposition will be carefully critiqued by the Court.

Wherefore,

**IT IS ORDERED** that Plaintiff may depose Mr. Kennedy but limit the areas of inquiry to those set forth in Proposed Questions 1, 2, 6, 7, 8, 13, and 15 to which Defendants have preserved the right to interpose specific objections based upon attorney-client privilege. In all other respects, Plaintiff's Motion to Compel *(Doc. 55)* is **denied.**

_____
**UNITED STATES MAGISTRATE JUDGE**